IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN DAVID HARRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13–CV–134 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff John David Harrell ("Harrell") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Harrell alleges that the ALJ erred by awarding a closed period of benefits, and finding that he was no longer disabled as of July 16, 2011. Harrell also alleges that a consultative opinion submitted to the Appeals Council constitutes new, material evidence necessitating remand. I agree that evidence submitted to the Appeals Council is new, material and should be considered by the ALJ. As such, I **RECOMMEND GRANTING IN PART** Harrell's Motion for Summary Judgment (Dkt. No. 11), **DENYING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16), and reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Harrell failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Harrell protectively filed for SSI and DIB on June 15, 2009, claiming that his disability began on June 8, 2008.[2] Administrative Record, hereinafter "R." 232. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 78–135. On November 1, 2011, ALJ Thomas W. Erwin held a hearing to consider Harrell's disability claim. R. 44–77. Harrell was represented by an attorney at the hearing, which included testimony from Harrell, his wife Carol, and vocational expert, Ashley Wells. R. 44–77.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Harrell's date last insured was originally December 31, 2011. R. 24. However, because he was granted a closed period of benefits, Harrell is now insured through June 30, 2015. P. Br. Summ. J. p. 2 n 3. Therefore, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

On December 13, 2011, the ALJ entered his decision analyzing Harrell's claim under the familiar five-step process.[3] The ALJ entered a partially favorable decision, granting Harrell a closed period of benefits from June 8, 2008 to July 16, 2011. R. 17–34. The ALJ found that Harrell suffered from the severe impairments of polysubstance abuse, and the following mental conditions: history of attention deficit disorder, anxiety, mood disorder, and psychotic disorder versus schizophrenia. R. 25. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 25. The ALJ further found that as of June 17, 2011, Harrell had the RFC to perform a full range of work at all exertional levels, with the qualification that he cannot (i) be exposed to hazards; (ii) climb ladders, ropes or scaffolds; (iii) perform work that consists of more than simple, routine, repetitive unskilled tasks in a low stress environment; (iv) perform work that involves more than occasional decision making or changes; (v) perform work that involves production rate, or pace work with strict predication standards; or (vi) perform work that involves more than occasional contact with supervisors, co–workers, or the public. R. 32. The ALJ determined that Harrell could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as night cleaner and laundry folder. R. 33. Thus, the ALJ concluded that he was not disabled after a closed period of benefits ending on June 16, 2011. R. 34.

Harrell requested that the Appeals Council review the ALJ's decision and submitted with his brief a psychological report prepared by Pamela S. Tessnear, Ph.D. R. 315–24. On February

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

1, 2013, the Appeals Council denied Harrell's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

The ALJ granted Harrell a closed period of disability from June 8, 2008 to July 16, 2011. Thus, the ALJ necessarily found that, beginning in 2008, the limitations caused by Harrell's mental conditions prevented him from working. The ALJ further concluded that Harrell's mental condition improved by July 17, 2011, to the extent that he was capable of re-entering the workforce. Thus, the focus in this case is on the evidence that Harrell's mental condition improved in July 2011, and whether that improvement is sustainable long-term. Harrell argues that the ALJ's determination that his mental condition improved in July 2011 to the point that he was capable of competitive employment is not supported by substantial evidence. Harrell further asserts that the report of Dr. Tessnear, submitted to the Appeals Council, is new, material evidence that warrants remand of this case to the Commissioner under 42 U.S.C. § 405(g). After careful review of the record, I agree with Harrell that Dr. Tessnear's report is new, material, and relevant evidence; and thus, it is appropriate to remand this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for consideration of Dr. Tessnear's opinion.

Harrell was born in August 1975, and has a high school education. R. 46, 78. Harrell previously worked an assortment of short-term, unskilled jobs. R. 33, 114–16. Harrell has a lengthy history of mental illness, including anxiety, mood disorder, psychotic disorder, and attention deficit hyperactivity disorder. R. 329–48. Harrell also has a history of drug and alcohol abuse, although he testified at the administrative hearing that he had been clean for the past year. R. 47. He has been hospitalized for his mental health and drug abuse issues multiple times, most recently in January 2011. R. 359–95, 606–16.

Harrell's medical records reflect fluctuations in his mental health condition throughout the relevant period. For example, on September 14, 2007, Harrell visited Jasdeep Miglani, M.D., for his anxiety and panic disorder. Harrell was stable at that time, even noting that his medication helped him to stay focused at work and he had been functioning at his job with "great success lately." R. 334. A year later, in October 2008, Harrell followed up with David Dalrymple, M.D., and reported being off his medication and having difficulty staying focused, keeping jobs and interacting with people. He also described agoraphobic-type symptoms and anxiety. R. 333. His mental status exam reflected a blunted affect, militaristic-type speech, scrambled thought processes, and content consistent with generalized anxiety disorder. R. 333. Dr. Dalrymple restarted Harrell on medications for anxiety and panic disorder and recommended that he see a therapist. R. 333.

In January 2009, Harrell was seen for a follow up and was "doing well." Harrell stated that his anxiety was under good control. R. 331. Three months later, on April 2, 2009, Harrell appeared for a routine appointment, and was extremely agitated and overtly delusional, talking about people watching him from the television set. R. 330. This began the first of three involuntary hospitalizations for mental health issues over a two month period. R. 359–395.

On March 15, 2010, Harrell visited psychiatrist Paul DeLapp, M.D., and reported that he was "much better" with medication, and felt stable. R. 574. His family physician noticed a significant difference in behavioral outbursts since he started a new medication, and his mental status examination was normal. R. 574. Two months later, Harrell presented to Dr. DeLapp in moderate distress, with an anxious mood and hostile affect. He reported continuation of his anger outbursts. R. 576. By July 2010, Harrell reported that his new medication was no longer helpful. R. 578–79.

5

On January 12, 2011, Harrell presented to the emergency room at Pulaski Community Hospital with psychotic behavior that was attributed to bipolar disorder. R. 526. He claimed, among other things, that he worked for the CIA and FBI. R. 609–16. He was involuntarily hospitalized for two days for treatment of an unspecified psychotic disorder R.609–16.

On February 3, 2011, Harrell underwent an initial psychiatric evaluation at the Veterans Affairs Medical Center ("VA") with David Brunstetter, M.D.[4] R. 700. A mental status exam reflected that Harrell was alert and oriented with fair eye contact, full affect and euthymic mood. He had good attention and concentration, and intact memory, except for a period just before and early on in his admission. His judgment and insight were fair to poor. R. 702. He was assessed with schizophrenia, opioid dependence and benzodiazepine dependence. R. 703. Dr. Brunstetter noted that Harrell was doing "much better" on bi-weekly injections of Risperdal, a medication for bipolar disorder. R. 703.

Harrell followed up with Joseph T. Mingoia, M.D. at the VA clinic on February 24, 2011. R. 681–83. Harrell reported that over the past month he was stable, and that Risperdal was helping him "quite nicely." R. 681. He was no longer having delusions involving the FBI and CIA, but did suffer from anxiety, sleeplessness and pacing behavior. R. 681. His mental status exam showed that he was calm and cooperative. His mood was anxious, and his affect was constricted. His judgment and insight were fair. R. 681.

On June 17, 2011, Harrell followed up with Dr. Brunstetter, and reported doing well. R. 735. He denied delusional thoughts and stated that his mood was stable and his anxiety was under control. R. 735. His mental status exam revealed good eye contact, normal speech, full affect with normal intensity, euthymic mood, no delusions, good attention and concentration,

---

[4] Harrell was in the air force from 1993 to 1996, but was discharged after an incident involving driving under the influence. R. 702.

6

intact memory, and fair judgment and insight. R. 735–36. Dr. Brunstetter noted that Harrell did well coming off of oral Risperdal and will continue a Risperdal injection. R. 736. He diagnosed Harrell with schizophrenia, and opioid and benzodiazepine dependence in early remission, and recommended continuing his medications. R. 736.[5]

In his next visit with Dr. Brunstetter, on September 16, 2011, Harrell reported doing "relatively well" with some continued low level anxiety and difficulty getting sleep. R. 724. He reported no delusional thinking, and a relatively stable mood. R. 724. His mental status exam was generally normal, with some anxiety. Dr. Brunstetter noted that Harrell "seems stable at this time," but increased his anxiety medication. R. 725.

On September 22, 2011, Dr. Brunstetter completed a mental impairment questionnaire for Harrell. R. 652–54. Dr. Brunstetter listed Harrell's diagnoses as schizophrenia, opioid and benzodiazepine dependence, in early remission, and problems with finances, health, and employment. R. 652. Dr. Brunstetter assessed Harrell's current GAF as 55.[6] Dr. Brunstetter noted that Harrell continued to suffer from generalized persistent anxiety, substance dependence in remission, improved hallucinations or delusions, and anger issues. R. 652. With regard to his ability to do work activities, Dr. Brunstetter found that Harrell would have moderate limitations working with others, maintaining socially appropriate behavior, making simple work-related decisions, completing a normal workday, responding appropriately to changes in a routine work setting, dealing with work stress, and being aware of hazards. R. 653. Dr. Brunstetter found that

---

[5] In his discussion of this medical record, the ALJ states that during the June 11, 2011 visit, "the psychiatrist suggested that claimant look for work." R. 28. The record in fact states, "[n]ot as keen to look for work at this visit. Did make him aware there are people at VEC who specifically help vets if he is interested." R. 735.

[6] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev.2000) (hereinafter "DSM–IV–TR"). A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

7

Harrell would have marked limitations interacting with the general public, dealing with the stress of semiskilled and skilled work, getting along with co-workers or peers, and accepting instructions and responding appropriately to supervisors. R. 653. Dr. Brunstetter indicated that Harrell had moderate functional limitations with activities of daily living and maintaining concentration, persistence and pace. R. 653. He noted that Harrell's impairment lasted or can be expected to last at least twelve months. When asked why Harrell would have a difficulty working at a regular job on a sustained basis, Dr. Brunstetter wrote "currently, psychosis is under relatively good control, but he still struggles with social interaction and with organization." R. 654.

At the administrative hearing on November 1, 2011, Harrell's counsel asked the ALJ to allow for a consultative examination by Dr. Tessnear. The ALJ stated that a consultative examination was not warranted because he had enough records, but stated "I think I need to send this one out, at the very least I'd like to get interrogatory responses from a psychological expert." R. 72. The ALJ sent the record to Gary Bennett, Ph.D., requesting that he review the record and complete medical interrogatories. R. 781.

On November 11, 2011, Dr. Bennett completed the interrogatories, along with a written opinion, stating that Harrell suffers from significant mental health issues. R. 783. Dr. Bennett questioned the relationship between Harrell's psychological symptoms and drug use, although he noted that Dr. Brunstetter considered Harrell's psychotic symptoms to be primary. R. 783. Dr. Bennett noted, "[t]here are times when Mr. Harrell's capacity to attend and concentrate has been clearly markedly deficient while at others, has been more of a moderate limitation." R. 783–84.

8

Dr. Bennett concluded that Harrell met listing 12.03[7] for Schizophrenic, Paranoid and other Psychotic Disorders, as of June 2008, and stated, "[a]t the very least, I would suggest a closed period of disability as the combination of his most recent treatment and sustained abstinence seems to be resulting in some improvement in his functioning. If full benefits are granted, I would certainly recommend he be re-evaluated in the next 1–2 years to determine if he continues to improve to the point where he would re-enter the work force." R. 784.

On the interrogatories, Dr. Bennett noted: 1) the record supports a finding that Harrell has a severe schizophrenia impairment; 2) he has a history of mood disturbance and anxiety; 3) he suffers moderate restrictions of activities of daily living; 4) he suffers marked restrictions with maintaining social functioning and maintaining concentration, persistence and pace; 5) he meets listing 12.03; 6) his medical conditions render him unable to work; and 7) Harrell's substance abuse is not material. R. 785–89.

Dr. Bennett also completed a medical source statement of ability to do work-related activities, and found that Harrell had 1) moderate impairments understanding and remembering complex instructions, carrying out complex instructions, and making complex work-related decisions; and 2) marked impairments with interacting appropriately with the public, supervisors and co-workers. R. 790–92.

Based upon the records summarized above, the ALJ concluded that Harrell qualified for a closed period of disability from June 2008 through July 16, 2011. R. 29. The ALJ recited the medical source statement of Dr. Brunstetter, but did not indicate what weight, if any, he attributed to it. The ALJ accorded "great weight" to the opinion of Dr. Bennett, although he did not adopt Dr. Bennett's conclusion that Harrell met listing 12.03. R. 25–26. The ALJ noted that

---

[7] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

9

Harrell's mental health follow up on July 17, 2011 showed significant improvement in symptomatology. R. 29. The ALJ also noted that Harrell's psychotic episode in January 2011 was precipitated by his discontinuance of medication for his mental impairments. R. 29. Thus, the ALJ determined that Harrell's disability ended on July 16, 2011. R. 29.

Two months later, on February 7, 2012, Dr. Tessnear evaluated Harrell, and completed a written report setting forth his functional limitations. Dr. Tessnear noted that Harrell's mental exam reflected a restricted affect and primarily anxious mood. Harrell smiled inappropriately at times, had limited insight into the nature of his problems, and had poor judgment. R. 321. His attention was variable and he was confused and distractible. He also retained a paranoid "flavor," which was reflected in his statements about his parents and medication. R. 322. Dr. Tessnear assessed a GAF score of 50.[8] She noted that Harrell's records reflect his psychiatric deterioration, and supported a diagnosis of undifferentiated schizophrenia. Dr. Tessnear stated,

> [w]ith medication, the most florid symptoms have been managed. However, the underlying psychopathology persists. Today, he is observed to smile inappropriately, as if responding to internal stimuli. He displays poor insight and still does not recognize the nature of his mental impairment. He believes that his condition improved as the result of a sheer act of will and he does not see a need for treatment. He wants to go off his medicine because he is suspicious of it and believes it is dangerous, reflecting ongoing paranoia….Though he is much improved, his presentation in the evaluation indicates that schizophrenia is still an appropriate diagnosis and that his symptoms may re-emerge. His inability to produce a valid PAI profile is likely due to cognitive problems which produce considerable confusion and poor ability to maintain focus.

R. 323. With regard to Harrell's functional limitations, Dr. Tessnear stated,

> Harrell is able to understand and follow simple instruction but has more difficulty with detail and complexity. He has poor ability to maintain concentration for extended periods. He is easily distracted and loses focus, then requires assistance to resume his activity. He becomes anxious and makes errors when he loses his train of thought. Poor insight and poor judgment prevent him from making good

---

[8] A GAF of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM–IV–TR.

> decisions. His anxiety prevents him from working with the public and he is likely
> to have trouble with co-workers or supervisors unless he can function in a low-
> stress setting that requires only superficial interaction. His ability to make
> adjustments and to deal with stress is seriously compromised by his condition.
> Though he may have periods of adequate functioning, these are not expected to be
> maintained indefinitely. Extended periods of decompensation, such as he has
> already exhibited, may well occur.

R. 323–24.

Harrell argues that the ALJ's determination that he was no longer disabled as of July 17, 2011, is not supported by substantial evidence, and further, that the Appeals Council should have remanded this matter back to the ALJ for consideration of Dr. Tessnear's report. The Appeals Council made Dr. Tessnear's report a part of the record, but found that it provided "no reason to review the Administrative Law Judge's decision." R. 1–6. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Harrell's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire

11

record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

In this case, I find that Dr. Tessnear's report constitutes new, relevant, and material evidence, and thus it is appropriate to remand this case to the Commissioner to consider the evidence under sentence four of 42 U.S.C. § 405(g). Dr. Tessnear's report is "new" evidence, as it was a consultative opinion obtained after the ALJ's decision in the case, and is not duplicative or cumulative of other evidence in the record. Dr. Tessnear is the only physician in the record to perform a consultative examination on Harrell.

Dr. Tessnear's report also relates to the time period at issue in this case. Dr. Tessnear examined Harrell a mere two months after the ALJ's decision in this case, and three months after Dr. Bennett's opinion, which the ALJ gave "great weight." Dr. Tessnear's report recited Harrell's long-term history of mental health problems and treatment, and predicted the present

12

and future limitations arising from his ongoing mental impairments. Further, Dr. Tessnear's report is directly relevant to the specific issue in this appeal—whether Harrell's mental condition improved by July 17, 2011, such that he was no longer disabled.

I also find that Dr. Tessnear's report is material and there is a reasonable possibility that it may change the outcome of the ALJ's decision. The relevant issue before the ALJ is whether Harrell's mental condition improved as of July 17, 2011, and if that improvement is sustainable such that he is no longer disabled. The ALJ determined the end date of Harrell's disability period based upon treatment notes in June and September 2011 showing an improvement in his mental condition. R. 29. However, a longitudinal review of Harrell's treatment history reflects that his condition often fluctuated between periods of stability and psychotic episodes. The ALJ also relied upon the opinion of Dr. Bennett, who recommended "at the very least" a closed period of disability. R. 784. Notably, Dr. Bennett did not specify when the closed period should end. Further, because Harrell's mental status fluctuated, Dr. Bennett recommended that he be re-evaluated to determine if he continues to improve "to the point where he could re-enter the workforce." R. 784.

Dr. Tessnear's report provides the type of re-evaluation contemplated by Dr. Bennett, and indicates that Harrell's mental condition did not continue to improve to the point where he could re-enter the workforce. Rather, Dr. Tessnear's report reflects that as of February 2012, Harrell's mental condition had deteriorated. Harrell was anxious, confused, distractible, responding to internal stimuli, and retained a paranoid "flavor." R. 321–22. Dr. Tessnear assessed Harrell with multiple work-preclusive limitations, consistent with those present during his closed period of disability. Dr. Tessnear concurred with Drs. Brunstetter and Bennett that the severity of

13

Harrell's mental impairments fluctuate, and stated, "[t]hough he may have periods of adequate functioning, these are not expected to be maintained indefinitely." R. 324.

When the ALJ determined that Harrell's disability ended on July 16, 2011, he did not have the benefit of Dr. Tessnear's opinion. As stated above, assessing the probative value of competing evidence is quintessentially the role of the fact finder. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011). Here, Dr. Tessnear's report directly contradicts the ALJ's conclusion that Harrell's mental condition improved in July 2011 to the point the he was capable of performing substantial gainful activity on a sustained basis. This is exactly the type of new evidence that must be remanded to the Commissioner because it calls into doubt the ALJ's decision grounded in the prior medical reports. See Salmons v. Astrue, 2012 WL 1884485 (W.D.N.C. May 23, 2012) (Remand to Commissioner under sentence four because it is role of ALJ, not court, to weigh inconsistent evidence regarding plaintiff's intellectual functioning). The ALJ has not had the opportunity to review Dr. Tessnear's opinion or reconcile it with the other evidence in the record. It is possible that, when the record is viewed in its entirety, there is substantial evidence to support a decision that Harrell was no longer disabled as of July 17, 2011. However, it is also reasonably possible that the opinion of Dr. Tessnear, indicating that as of February 2012 Harrell's mental condition had deteriorated, would change the ALJ's decision to award a closed period of benefits. Accordingly, I recommend that this case be remanded to the ALJ with instructions to consider the opinion of Dr. Tessnear.[9]

---

[9] Harrell also argues that the ALJ's determination that he was no longer disabled as of July 17, 2011, is not supported by substantial evidence. Having concluded that the case must be remanded for consideration of Dr. Tessnear's opinion because it directly and materially relates to the underlying issue in the case, I do not need to address whether it the ALJ's conclusion regarding a closed period of disability was proper. On remand, the ALJ must re-weigh all of the evidence in the record in consideration of Dr. Tessnear's report.

**RECOMMENDED DISPOSITION**

For the reasons set forth above, it is recommended that the defendant's motion for summary judgment be **DENIED**, Harrell's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: July 30, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge